IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) STRIKE, LLC § § *Plaintiff,* § § vs. § § (1) SANDY CREEK FARMS, INC., § (2) STEVE BARRINGTON, § (3) JOHN DOE #1, § (4) JOHN DOE #2, § (5) JOHN DOE #3, and § (6) JOHN DOE #4, § § *Defendants*. § | Case No. CIV-20-571-PRW |

**REPLY BY SANDY CREEK FARMS, INC. AND STEVE BARRINGTON TO STRIKE LLC RESPONSE TO 12(b)(1) AND 12(b)(6) MOTION TO DISMISS**

**I.   OVERVIEW**

Defendants Sandy Creek Farms, Inc., and Steve Barrington (collectively, Sandy Creek) by undersigned counsel, file this reply to Strike LLC's Response (ECF 21) to Sandy Creek's Motion to Rule 12 (b) motion to dismiss. Regarding jurisdiction, Strike's appeal to policy (ECF 21 at 6) to excuse itself from disclosing the name and citizenship of every investor in an unincorporated association to demonstrate diversity jurisdiction crumbles under the weighty constitutional imperative of Article III. On the merits, Strike fails to acknowledge that iit did not adequately allege, beyond conclusory statements, essential elements of the tortious interference with contract. Because there is no set of facts on which Strike may prevail on its claim, the complaint must be dismissed.

## II.     ARGUMENT

### A.     This Court May Not Excuse Strike From Disclosing the Identity and Citizenship of Its Members' Members

Strike attempts to split hairs in its response, arguing that proof of diversity only requires unincorporated entities to identify the citizenship of members and not their identities. Yet in all the cases that Strike cites, it does not offer a single example where a court evaluated only the citizenship of the LLC members as a basis for finding diversity jurisdiction and not the identities of those members itself. For example, Strike claims that *Am. Energy Permian Basin, LLC v. Ets Oilfield Servs.*, LP, CIV-16-1024-R, at *3 (W.D. Okla. Dec. 19, 2016) failed to establish diversity jurisdiction because of lack of information on members' citizenship. But a close reading of the entire case shows that the *reason* that citizenship could not be established was because the members' identities had not been disclosed. If anything, *Am. Energy Permian* shows that the identity of LLC members and their citizenship go hand in hand and that without disclosure of a member's identity, its citizenship cannot be ascertained either. Indeed, in another Oklahoma federal district court case, *Levelland Prods., LLC v. W.L.L. & Assocs.*, No. CIV-15-1317-D at *2 (W.D. Okla. Dec. 17, 2015), the court found that "A federal court thus needs to know each member's citizenship, and if necessary each member's members' citizenships" [to determine diversity and that "In this regard, Plaintiff fails to identify Ragweed's member(s) so as to enable this Court to properly determine whether subject matter jurisdiction exists." In short, without the identity of all of an LLC's members and members' members, a court cannot assure itself of diversity.

Strike cries foul, arguing that requiring an LLC to plead the names of all individual members would deprive an unincorporated party of the ability to bring a diversity case. Not so.

Strike cites no law that protects the confidentiality of equity members; it is entirely Strike's choice not to identify those members. Moreover, Strike could provide the names of these members under seal. To be sure, these requirements may pose an additional burden, but this standard is necessary to protect the constitutional integrity of Article III courts.

B.  **Strike's Complaint Must Be Dismissed Because It Failed to Please Crucial Elements of the Tortious Interference Claim**

Strike's complaint fails not due to inadequate facts but because it did not state the requisite elements of a tortious interference claim under Oklahoma law. As stated in the Motion to Dismiss, under Oklahoma law, a tortious interference claim has four elements: "(1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Woska v. Health Care Serv. Corp.*, No. CIV-17-89-D, at *9-10 (W.D. Okla. Feb. 20, 2018), *citing Wilspec Techs., Inc. v. DunAn Holding Grp., Co*, 2009 OK 12, ¶ 15, 204 P.3d 69, 74 (citing *Mac Adjustment, Inc. v. Prop. Loss Res. Bureau*, 1979 OK 41, ¶ 5, 595 P.2d 427, 428); *see also Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 14, 212 P.3d 1158, 1165.

With regard to the first element, the actor must not only have knowledge of the contract, but *also* of the fact that he is interfering with the performance of the contract." Restatement (Second) Torts § 766, comment (1977) (emphasis added). " In *Architects Collective v. Gardner Tanenbaum Group*, No. CIV-08-1354-D, at *6 (W.D. Okla. July 6, 2010), a case that Sandy Creek cited and Strike did not distinguish, an architect had a contract with a client under which the architect drafted and provided plans to the client which were protected by copyright. The client subsequently gave those plans to the architect's competitor who the client then retained.

The architect sued, arguing that the competitor interfered with the architect's contract with its client. The court disagreed. Though it found that the competitor was aware of the architect's contract with the client, the competitor did not induce the client to breach its contract with the architect, nor was the competitor aware that its acceptance of copyrighted plans interfered with the contract or was prohibited. Thus, while the court found that the competitor was aware of the contract, it dismissed the tortious claim because the competitor did not know that its actions interfered with the agreement.

Here, Sandy Creek did not commit the actions alleged, such as flooding the easement or breaching the berms - a conclusion which the court itself arrived at following the September 8, 2020 hearing in the *Midship Pipeline Company_LLC*, Case No. 5-18-CV-858-G (W.D. Oklahoma), Doc. No. 730. But even if it had, Sandy Creek could not have possibly known that its actions interfered with Strike's contract with Midship, or made performance more expensive. It is only since this incident that Sandy Creek has learned that Strike warranted its work to Midship, meaning that Strike, rather than Midship suffered the cost of delays. Sandy Creek may have thought that the alleged flooding and berm breaking (which again, it did not commit) was costing Midship more money - but it had no reason to think that Strike was paying the price, since Midship was the entity with regulatory obligations to FERC.

As for Strike's remaining claims, Strike failed to respond to Sandy Creek's point that "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991)." *Taverna v. First Wave, Inc.*, No. 10-CV-129-CVE-FHM, at *3 (N.D. Okla. July 22, 2010). There were no facts alleged in the Complaint to suggest that Sandy Creek committed an

unreasonable act in bad faith. When Sandy Creek's water line was ruptured by Strike in the November and December time frame and Sandy Creek could not shut the valve, water flowed into the easement and there was nothing Sandy Creek could do to stop it. In other words, Sandy Creek was justified for the water running. As for breaching the berms, Sandy Creek again denies having done so, and even if it had, the breach would not have caused the flooding that Strike claims.

Strike does not offer any additional detail on causation either. It simply contends that Sandy Creek's actions allegedly caused any increased damages - without providing any information on the extent of the delay or the magnitude of the costs. Strike now adds that Sandy Creek's actions forced Strike to leave the property, return and employ security cameras - which one would assume is a standard course of operation when dealing with a highly dangerous pipeline site that could be compromised by intruders or terrorists. As for the exhibit to Sandy Creek's pleading, it merely aggregated information from the FERC docket and again, shows that there were dozens of issues regarding Strike's performance that caused delay and had nothing to do with Sandy Creek.

### III.   CONCLUSION

Wherefore, for the foregoing reasons, Sandy Creek and Mr. Barrington move this Court to dismiss Strike's Complaint under Fed.R. Civ. Pro. 12(b)(1) for want of jurisdiction and under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim for the reasons stated in the Motion to Dismiss and this Reply.

Respectfully submitted,

*/s/ Carolyn Elefant*
Carolyn Elefant (DC Bar No. 425433 )

       Law Offices of Carolyn Elefant, PLLC
       1440 G Street, NW, 8th Floor
       Washington, D.C. 20005
       T: (202) 297-6100
       E: Carolyn@carolynelefant.com
       COUNSEL for SANDY CREEK FARM, INC. &
       CENTRAL LAND
       *Pro hac vice admission pending this case*

       —and—

       _____
       Elaine M. Dowling (OBA #14, 217)
       6801 Broadway Extension, Suite 310
       Oklahoma City, OK 73116
       405-842-8005—telephone
       405-840-6367—fax
       dowlinglawoffice@aol.com
       LOCAL COUNSEL for SANDY CREEK FARM, INC. &
       CENTRAL LAND

### CERTIFICATE OF SERVICE

I, Carolyn Elefant, certify that on this 13th day of October, 2020 I caused the foregoing Notice of Deposition to be served by electronic mail on parties to the case.

       Carolyn Elefant (DC Bar No. 425433)
       Law Offices of Carolyn Elefant, PLLC
       1440 G Street, NW, 8th Floor
       Washington, D.C. 20005
       T: (202) 297-6100
       E: Carolyn@carolynelefant.com
       COUNSEL for SANDY CREEK FARM, INC. &
       CENTRAL LAND
       *Pro hac vice admission granted*

       —and—

Elaine M. Dowling (OBA #14, 217)
6801 Broadway Extension, Suite 310
Oklahoma City, OK 73116
405-842-8005—telephone
405-840-6367—fax
dowlinglawoffice@aol.com
LOCAL COUNSEL for SANDY CREEK
    FARM, INC. &
CENTRAL LAND